Filed 8/27/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| ANIMAL LEGAL DEFENSE FUND et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> CALIFORNIA EXPOSITION AND STATE FAIRS et al., <br><br> Defendants and Respondents. | A140981 <br><br> (Alameda County <br> Super. Ct. No. RG13687980) |

Plaintiffs brought a Code of Civil Procedure section 526a (section 526a) taxpayer action against defendants based on allegations that defendants commit animal cruelty every summer by transporting pregnant pigs and housing them in farrowing crates at the state fair. One defendant, joined by the other, demurred, contending plaintiffs' complaint failed to state a cause of action for three distinct reasons, including that California's animal cruelty laws are not enforceable through a taxpayer action. The trial court agreed on all accounts, and sustained the demurrer without leave to amend. Plaintiffs appeal. We affirm.

**SUMMARY OF RELEVANT LAW**

**California's Animal Cruelty Law**

Under California's animal cruelty laws, it is a crime to cause harm to an animal through an affirmative act or an act of neglect or to confine an animal in an enclosed space without an adequate exercise area. (Pen. Code, §§ 597, 597t.)[1] Specifically, section 597 provides, as pertinent here, that "every person who . . . deprives of necessary

---

[1] Undesignated statutory references, other than references to section 526a, are to the Penal Code.

1

sustenance, drink, or shelter . . . and . . . subjects any animal to needless suffering, or inflicts unnecessary cruelty upon the animal, or in any manner abuses any animal . . . is, for each offense, guilty of a crime . . . ." (§ 597, subd. (b).) Section 597t provides in pertinent part: "Every person who keeps an animal confined in an enclosed area shall provide it with an adequate exercise area."

**Proposition 2**

In 2008, California voters passed the Prevention of Farm Animal Cruelty Act, Health and Safety Code sections 25990 et seq. Commonly known as Proposition 2, it provides: "In addition to other applicable provisions of law, a person shall not tether or confine any covered animal, on a farm, for all or the majority of any day, in a manner that prevents such animal from: [¶] (a) Lying down, standing up, and fully extending his or her limbs; and (b) Turning around freely." (Health & Saf. Code, § 25990.) "Covered animal" is defined as "any pig during pregnancy, calf raised for veal, or egg-laying hen who is kept on a farm." (*Id.*, § 25991, subd. (b).) In effect, Proposition 2 bans three forms of confinement used in the farmed animal industry: gestation crates for pregnant pigs, veal crates for calves, and battery cages for egg-laying hens. Although enacted in 2008, Proposition 2 became operative January 1, 2015, after the proceedings that are the subject of this appeal.

Proposition 2 contains three express exceptions that are relevant to plaintiffs' claims. First, it does not apply "During transportation." (Health & Saf. Code, § 25992, subd. (c).) Second, it does not apply to animals "During . . . state or county fair exhibitions . . . ." (*Id.*, subd. (d).) And third, it does not apply "To a pig during the seven-day period prior to the pig's expected date of giving birth." (*Id.*, subd. (f).)

Finally, Proposition 2 contains a savings clause: "The provisions of this chapter are in addition to, and not in lieu of, any other laws protecting animal welfare, including the California Penal Code. This chapter shall not be construed to limit any state law or regulations protecting the welfare of animals . . . ." (Health & Saf. Code, § 25994; see also § 25990 [prohibition against confining a covered animal is "[i]n addition to other applicable provisions of law"].)

**Code of Civil Procedure Section 526a**

Section 526a creates a taxpayer private right of action to restrain the illegal or wasteful expenditure of public funds. It provides in pertinent part: "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a county, town, city or city and county of the state, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a citizen resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax therein." Although the statutory language authorizes a taxpayer action only as to local governmental units and their officers, courts have extended section 526a's reach to state agencies. (*Chiatello v. City and County of San Francisco* (2010) 189 Cal.App.4th 472, 482.)

## BACKGROUND

**Plaintiffs' Complaint**

On July 18, 2013, plaintiffs filed a complaint asserting a section 526a action against defendants, premised on the theory that defendants waste taxpayer money and staff time by obtaining, transporting, and exhibiting pregnant pigs in violation of sections 597 and 597t. Specifically, plaintiffs alleged as follows:

Plaintiff Animal Legal Defense Fund (ALDF) is a nonprofit charitable organization whose mission is "to advance the interest of animals through the legal system." Plaintiffs Jan Gates and Bonnie Mencher are members of ALDF. All plaintiffs reside and pay taxes in California.

Defendant California Exposition and State Fairs (Cal Expo) is a state agency created and regulated by California Food and Agriculture Code sections 3301 et seq. It is responsible for organizing the California State Fair (State Fair), which takes place for three weeks every July.

The University of California at Davis School of Veterinary Medicine (School) is a subdivision of defendant The Regents of the University of California (Regents).

3

Every year, Cal Expo enters into a cooperative arrangement with the School to set up and manage the livestock nursery exhibit at the State Fair where pregnant pigs and other animals are put on display for three weeks to give birth and nurse. Cal Expo provides the land, tent, support infrastructure, and financial compensation, while the School provides the animals, equipment, and staff.

Shortly before the State Fair begins, the School obtains and transports pregnant pigs to be displayed in the livestock nursery exhibit. The pigs have approximately two weeks remaining in their pregnancy when they are transported. Transporting pigs during the last two weeks of their pregnancy causes suffering due to stress and physical discomfort, potentially resulting in an aborted pregnancy.

Once at the fair, the School places the pregnant pigs in farrowing crates. As plaintiffs describe them: "[F]arrowing crates are small metal stalls approximately five feet long and three feet wide. These are also the approximate dimensions of the pigs themselves. On both sides immediately adjacent to the mother's area are two enclosed areas for the piglets to live once they are born. Metal bars separate the mother's section from the piglets' but provide an opening so the piglets can nurse. [¶]. . .The farrowing crates are so small that the mother pigs cannot turn around or walk. The pigs remain confined to the farrowing crates for the three-week duration of the State Fair . . . ." The restriction of movement once at the State Fair deprives the pigs of the opportunity to engage in any exercise, which causes suffering due to physical discomfort, boredom, and stress.

The farrowing crates have metal-grate flooring and lack bedding material, which causes additional suffering. The lack of bedding material causes physical and thermal discomfort for the pigs and frustrates their maternal instinct to build a nest, causing stress and emotional depression that manifests outwardly as restlessness and bar-chewing.

The crated pigs are displayed as close as four feet to attendees of the State Fair. The pigs have a strong instinct to isolate themselves days before and while giving birth, as well as for several days at the beginning of the nursing period. By farrowing in close

4

proximity to the State Fair crowds with nowhere to retreat, the pigs suffer stress and discomfort.

Plaintiffs sought to enjoin defendants from transporting pregnant pigs to the State Fair for non-medical purposes during the final 15 days of their pregnancy, confining them to farrowing crates and other similar areas with metal floors and insufficient bedding material, and keeping them in close proximity to State Fair attendees during the days leading up to and following birth. Plaintiffs also sought a declaration that such conduct is illegal.

**The Regents' Demurrer**

On September 30, 2013, the Regents demurred to the complaint, with Cal Expo subsequently filing a joinder. The Regents asserted three independent reasons the complaint failed to state a cause of action. First, the conduct of which plaintiffs complained was not illegal because Proposition 2 would not proscribe defendants' conduct once in effect. Second, there is no private right of action to enforce the animal cruelty provisions of the Penal Code, as held in *Animal Legal Defense Fund v. Mendes* (2008) 160 Cal.App.4th 136 (*Mendes*). Third, section 526a taxpayer actions do not lie where the challenged conduct involves an exercise of discretion by another branch of government, such as a prosecutor's decision to charge a particular act as a crime.

Plaintiffs filed opposition, responding to each of the Regents' arguments. They contended Proposition 2 was irrelevant to their claims, because not only was it not yet operative, but it also did not apply to the conduct of which they complained—conduct, plaintiffs argued, that constituted animal cruelty under sections 597(b) and 597t, which Proposition 2's savings clause expressly preserved. Plaintiffs also argued that *Mendes* was inapplicable, as it held only that there is no private right of action under section 597t, whereas they were asserting a taxpayer action under section 526a. Lastly, plaintiffs disputed that they sought to interfere with the discretion of the executive branch, because state agencies lack the discretion to commit animal cruelty and because their claims did not interfere with the prosecutor's discretion to bring future animal cruelty charges.

5

After the Regents filed a reply, the trial court issued a tentative ruling rejecting all three grounds asserted by the Regents and overruling the demurrer. The Regents contested the tentative ruling, and the matter came on for hearing on November 18, 2013. After a lengthy hearing, the court took the matter under submission.

On December 9, 2013, the trial court entered an order reversing course from its tentative ruling: it agreed with the Regents on all three asserted grounds and sustained the demurrer without leave to amend. The court first concluded that Proposition 2 did not apply to the dispute, both because it was not yet operative and because it contained exemptions for covered animals in transportation and at state fairs and for farrowing pigs. Nevertheless, the court could not "justify . . . present or future injunctive and/or declaratory relief with regard to treatment of animals specifically covered by the oncoming regulatory scheme, particularly as it appears that defendants' present practices will be lawful in that framework." Moreover, the court rejected plaintiffs' position that the conduct could be enjoined as unlawful under the more general prohibitions of California's animal cruelty laws, reasoning that Proposition 2 "cannot be presumed to be other than a consistent and harmonious extension of the already existing and more general animal cruelty provisions of [Penal] Code § 597."

The court also agreed that plaintiffs lacked a private right of action to enforce the Penal Code provisions, describing as "illogical and without merit" their attempt to do "*as taxpayers* . . . what they may not do as bystander citizens . . . ." It noted that section 526a "cannot . . . be read as a *carte blanche* for taxpayers who declare themselves to be concerned about a potential violation of the Penal Code to do what concerned citizens cannot do under *Mendes*. . . . Penal Code § 597 contains its own unique enforcement mechanism for those asserting that animals are being criminally abused."

Finally, the court found that the complaint was an "improper[] attempt" by plaintiffs "to pursue principally 'political' issues and issues involving the exercise of the discretion of either the legislative or executives branches of government."

After the court entered judgment in favor of defendants, plaintiffs filed this timely appeal.

## DISCUSSION

### The Standard of Review

The standard of review governing an appeal from a demurrer sustained without leave to amend is well established. As we summarized in *Chiatello v. City and County of San Francisco, supra,* 189 Cal.App.4th at p. 480: " 'Because this case comes to us on a demurrer for failure to state a cause of action, we accept as true the well-pleaded allegations in plaintiffs' first amended complaint. " 'We treat the demurrer as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. [Citation.] We also consider matters which may be judicially noticed.' [Citation.] Further, we give the complaint a reasonable interpretation, reading it as a whole and its parts in their context. [Citation.]" ' [Citation.] We likewise accept facts that are reasonably implied or may be inferred from the complaint's express allegations. [Citations.] ' " 'A demurrer tests the legal sufficiency of the complaint . . . .' [Citations.] On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law. [Citations.] When the trial court sustains a demurrer without leave to amend, we must also consider whether the complaint might state a cause of action if a defect could reasonably be cured by amendment. If the defect can be cured, then the judgment of dismissal must be reversed to allow the plaintiff an opportunity to do so. The plaintiff bears the burden of demonstrating a reasonable possibility to cure any defect by amendment. [Citations.]" ' [Citation.]"

### Plaintiffs Cannot Assert a Section 526a Taxpayer Claim Predicated on a Violation of Section 597 or 597t

On appeal, plaintiffs make the same arguments they made in opposition to the Regents' demurrer. We address only one, plaintiffs' claim that, contrary to the trial court's conclusion, they can in fact assert a section 526a taxpayer action to enjoin waste arising out of defendants' alleged violation of the animal cruelty laws. Like the trial court, we reject plaintiffs' contention, concluding that they cannot circumvent the

7

prohibition recognized in *Mendes* by couching their claim as a section 526a taxpayer action.

In *Mendes*, ALDF and two consumers brought an action against two individuals who were in the business of raising calves placed with them by dairies. Plaintiffs alleged that at any one time defendants housed approximately 12,000 calves confined to isolation crates for up to 60 days at a time. According to plaintiffs' allegations, the crates were barely bigger than the calves themselves, preventing them from turning around or lying down in a natural position. (*Mendes, supra,* 160 Cal.App.4th at p. 140.)

Plaintiffs' complaint asserted two causes of action. The first, asserted only by ALDF, alleged that defendants' confinement of calves violated section 597t—the same animal cruelty provision on which ALDF's claims here are, in part, premised. (*Mendes, supra,* 160 Cal.App.4th at p. 140.) The second, asserted only by the consumers, alleged a violation of California's unfair competition law, Business and Professions Code section 17200 et seq. (*Id.* at p. 141.) Both causes of action sought declaratory and injunctive relief. (*Id*. at pp. 140–141.) Defendants demurred, the trial court sustained the demurrer without leave to amend, and plaintiffs appealed. (*Ibid*.)

The Court of Appeal first addressed ALDF's cause of action, considering whether, as ALDF contended, section 597t impliedly established a private right of action in entities such as ALDF "with a long-standing commitment to carrying out the laws protecting animals and a history of 'direct work in the area of animal cruelty law enforcement and protection.' " (*Mendes, supra,* 160 Cal.App.4th at p. 141.) Acknowledging that "a criminal statute can expressly or impliedly give rise to a private right of action for its violation," (*id*. at p. 141) the court explained that whether it did so there was a question of legislative intent. And it held that the Legislature did not intend there to be a private right of action for a violation of section 597t, reasoning that, "In light of the overall statutory scheme effectively 'deputizing' humane societies to aid local authorities in the enforcement of anticruelty laws, we think it clear that the Legislature did not intend to create a private right of action in other private entities, no matter how well intentioned the goals of such entities." (*Id.* at p. 142.)

The court went on to describe in detail the statutory scheme to which it was referring, detail we quote at length as it is relevant to whether plaintiffs can assert their taxpayer action here. Thus:

"Since 1905, California has authorized the formation of corporations for the prevention of cruelty to animals. (See Civ. Code, former § 607, repealed by Stats. 1947, ch. 1038, § 100001, p. 2439; see also Stats. 1947, ch. 1038, § 10404, p. 2423, enacting Corp. Code, § 10400.) Such a corporation (hereafter section § [*sic*] 10400 corporations) 'may proffer a complaint against any person, before any court or magistrate having jurisdiction, for the violation of any law relating to or affecting . . . animals, and may aid in the prosecution of any such offender before such court or magistrate.' (Corp. Code, § 10404.) [¶] . . . [¶]

"Only section 10400 corporations may apply for appointment of humane officers, whose duty 'shall be the enforcement of the laws for the prevention of cruelty to animals.' (Corp. Code, § 14502, subd. (a)(1)(A)(i).) Humane officers are required to have initial qualifications and subsequent periodic training. (*Id.*, subd. (i).) Powers to enforce anticruelty laws are conferred on humane officers by statute. (*See id.*, subd. (i)(1)(A)–(C), (2)(A)–(C); see also Pen. Code, §§ 597f, 599aa [seizure of certain animals by humane officers].)

"Not only do the Corporations Code and the Penal Code provide for extensive regulation and empowerment of section 10400 corporations and humane officers, the Penal Code expressly provides a remedy for those not so regulated when they believe, inter alia, animal cruelty 'is being, or is about to be' committed in 'any particular building or place.' (Pen. Code, § 599a.) 'When complaint is made, on oath, to any magistrate authorized to issue warrants in criminal cases, that the complainant believes' animal cruelty is taking place or will take place at a specific site, 'the magistrate must issue and deliver immediately a warrant directed to any sheriff, police or peace officer or officer of any [section 10400 corporation], authorizing him to enter and search that building or place, and to arrest any person there present violating, or attempting to violate' any anticruelty law. (*Ibid*.)" (*Mendes, supra*, 160 Cal.App.4th at pp. 142–143.)

9

In light of this statutory scheme, the *Mendes* court concluded that recognition of a private right of action under section 597t would be inconsistent with the Legislature's entrustment of enforcement of anticruelty laws to local authorities and humane societies: "[T]here is in place an explicit and comprehensive legislative scheme for enforcement of anticruelty laws, including an explicit avenue for enforcement upon the complaint of any person. This broad and somewhat unusual scheme for enforcement in the criminal system of laws for the protection of animals, including direct participation of both concerned residents and registered humane officers, demonstrates a legislative intent that these laws not be enforceable through a private right of action in civil court." (*Mendes, supra,* 160 Cal.App.4th at pp. 143–144.)[2]

As can be seen, *Mendes* held that the Legislature did not intend to establish an implied private right of action for a section 597t violation. It did not, as ALDF correctly notes, address whether a taxpayer can assert a section 526a claim predicated on a violation of section 597 or 597t. ALDF submits this distinction precludes the application of *Mendes* here. We conclude otherwise, that the rationale of *Mendes* applies equally to plaintiffs' taxpayer action.

As our Supreme Court long ago recognized, "The primary purpose of [section 526a], originally enacted in 1909, is to 'enable a large body of the citizenry to challenge governmental action which would otherwise go unchallenged in the courts because of the standing requirement.' [Citation.]" (*Blair v. Pitchess* (1971) 5 Cal.3d 258, 267–268; see also *Chiatello v. City and County of San Francisco, supra,* 189 Cal.App.4th at p. 481.) Here, as laid out in *Mendes*, there exists a comprehensive statutory scheme that provides multiple avenues for the enforcement of California's animal cruelty laws. Humane societies are vested with "quasi-governmental powers" to aid local authorities in the enforcement of anticruelty laws, and any individual can make a complaint under oath to a

---

[2] The court went on to address the consumers' unfair competition law claim, concluding they had not alleged an adequate injury to state a cause of action under Business and Professions Code section 17200 et seq. (*Mendes, supra,* 160 Cal.App.4th at pp. 145, 147.)

magistrate authorized to issue warrants in criminal cases if the complainant believes animal cruelty is taking place or will take place.  (*Mendes, supra,* 160 Cal.App.4th at pp. 142–143.)  These methods of enforcement are in addition to the authority of law enforcement agencies to enforce the penal laws of California.

In light of these many means of enforcing the animal cruelty laws, the very purpose of a section 526a action is not furthered by plaintiffs' lawsuit here, since it cannot be said that defendants' conduct—if indeed violative of the animal cruelty laws—would go unchallenged in the absence of a taxpayer action (notwithstanding plaintiffs' claim that they "are the only persons who can challenge this unlawful government conduct because Cal Expo and the School's victims are pigs who do not have standing to sue").  It is worth noting, " 'California has one of the nation's toughest anticruelty laws, and enforcement of the law appears to be more rigorous than in many other states.' " (*Humane Society of the United States v. State Bd. of Equalization* (2007) 152 Cal.App.4th 349, 359 (*Humane Society*), quoting Francione, Animals, Property, and the Law (Temple Univ. Press 1995) p. 119.)

ALDF attempts to distance itself from *Mendes*, arguing that because section 526a empowers taxpayers to sue governmental entities to stop unlawful activity that violates a legal standard found elsewhere, it provides its own independent right of action, even where, as here, the predicate statute does not.  In other words, ALDF seeks to enjoin defendants from illegally using public resources, as opposed to seeking to enforce the animal cruelty laws.  But section 526a does not create an absolute right of action in taxpayers to assert *any* claim for governmental waste.  To the contrary, courts have recognized numerous situations in which a section 526a claim will not lie.  (See, e.g., *Daar v. Alvord* (1980) 101 Cal.App.3d 480, 487 ["[E]ven assuming the illegality of the [tax] collection process, Code of Civil Procedure section 526a was not intended to be utilized in challenging that illegality."]; *City of Ceres v. City of Modesto* (1969) 274 Cal.App.2d 545, 555 ["courts should not take judicial cognizance of disputes which are primarily political in nature, nor should they attempt to enjoin every expenditure which

11

does not meet with a taxpayer's approval."].) To this list, we add a claim for alleged governmental waste based on an alleged violation of section 597 or 597t.

Our conclusion finds support in the dearth of authority recognizing a section 526a taxpayer action predicated on an alleged criminal violation. Plaintiffs cite only one case, *Mendoza v. County of Tulare* (1982) 128 Cal.App.3d 403 (*Mendoza*), in which, as they would have it, the Penal Code "supplied [the] standard" for a taxpayer action. *Mendoza* is unavailing.

Plaintiffs in *Mendoza* were four inmates and one taxpayer who brought a prisoners' class action challenging the conditions at Tulare County jail. Their complaint alleged "various violations of the federal and state Constitutions, the federal Civil Rights Act (42 U.S.C. § 1983), and the California Penal and Health and Safety Codes," and sought, among other forms of relief, declaratory and injunctive relief restraining the County from maintaining the alleged unlawful procedures and jail conditions. (*Mendoza, supra,* 128 Cal.App.3d at pp. 407–408.) The county and other defendants demurred, the trial court sustained the demurrers without leave to amend, and plaintiffs appealed. (*Id.* at p. 407.)

Among the numerous issues before the Court of Appeal was whether the taxpayer had standing to assert a section 526a claim. (*Mendoza, supra,* 128 Cal.App.3d at p. 415.) In its cursory analysis of the issue, the court held that the taxpayer did in fact have standing to bring his taxpayer suit because "the existence of directly affected individuals who might also have standing to sue does not preclude a taxpayer's suit" and "directly aggrieved parties and taxpayers have concurrent standing to bring suit to enjoin government action." (*Id.* at p. 415.) From this, we can surmise that the only basis on which defendants challenged the taxpayer's standing was whether the taxpayer could maintain his section 526a action when other plaintiffs who were directly impacted by the jail conditions were asserting similar claims. The opinion does not suggest that the court considered whether the taxpayer could maintain a section 526a action based on an alleged failure to comply with a Penal Code provision, as is the case here.

12

Perhaps more significant is the nature of the Penal Code sections at issue in *Mendoza.* Plaintiffs alleged a failure to maintain a licensed physician in the jail in violation of section 4023, lack of segregation of pretrial detainees from sentenced prisoners in violation of sections 4001 and 4002, and implied the board of supervisors failed to provide sufficient funds for prisoners as required by section 4015. (*Mendoza, supra,* 128 Cal.App.3d at pp. 417, 421.) These Penal Code provisions set forth guidelines governing procedures and conditions applicable to the jail; none proscribed conduct that would subject defendants to criminal prosecution, as is the case with sections 597 and 597t.

Plaintiffs also cite our opinion in *Humane Society, supra,* 152 Cal.App.4th 349, 360–364, for the proposition that "courts have presumed that Section 526a may be used to enjoin violations of the Animal Cruelty Law." Nothing in *Humane Society* suggests, however, that we made any such a presumption.

In *Humane Society, supra,* 152 Cal.App.4th 349, the Humane Society of the United States and several individual taxpayers filed a section 526a action against the State Board of Equalization and the state controller to partially bar the implementation of an amendment to the Revenue and Taxation Code that provided an exemption from California sales and use taxes for the gross receipts for "farm equipment and machinery . . . used primarily in producing and harvesting agricultural products." (Rev. & Tax. Code, § 6356.5, subd. (a).) Plaintiffs sought to enjoin application of that exemption to poultry producers who purchased battery cages for egg-laying hens, alleging that permitting those producers to qualify for the exemption violated sections 597, subdivision (b), and 597t because the battery cages caused the hens unnecessary suffering. (*Humane Society, supra,* 152 Cal.App.4th at pp. 352–354.) Defendants demurred, challenging plaintiffs' standing as taxpayers as well as the sufficiency of the allegations to state a cause of action under section 526a. (*Id.* at p. 354.) The court sustained the demurrer without leave to amend, and plaintiffs appealed. (*Id.* at pp. 354–355.)

13

We affirmed, agreeing with defendants that the complaint failed to allege a cause of action, for multiple reasons. (*Humane Society, supra,* 152 Cal.App.4th at p. 360.) First, we noted that the allegedly improper conduct—subjecting hens to needless suffering—involved conduct not by public officials but rather by certain poultry and egg producers, and a section 526a claim cannot be asserted where the challenged governmental conduct is legal. (*Id*. at pp. 361–362.) We rejected the Humane Society's attempt "to transform the [State Board of Equalization] into some sort of a police agency with regard to chicken coops." (*Id*. at p. 362.) We also expressed concern that a decision in the Humane Society's favor could open the door to an "inevitable endless stream of potential litigation" directed at purchasers of equipment used to house cattle, sheep, pigs, or " 'fur-bearing animals in captivity.' " (*Id.* at p. 363.) And we cited a "final reason for affirmance: [plaintiffs'] pleas for governmental action to relieve the alleged mistreatment of chickens should be directed to the Legislature, not the judiciary." (*Ibid.*)

From this, plaintiffs infer a presumption "that Section 526a may be used to enjoin violations of the Animal Cruelty Law," a presumption apparently derived from the fact that we did not hold otherwise. But nothing in *Humane Society* can be construed as supporting this presumption. Nothing suggests that the parties raised this issue—or that it was in any way before us.

*Nathan H. Schur, Inc. v. City of Santa Monica* (1956) 47 Cal.2d 11 (*Schur*) is instructive, where our Supreme Court rejected an attempt to enjoin a crime via a taxpayer action. There, a corporate plaintiff brought a section 526a action against the city of Santa Monica and its police chief, alleging that city officials improperly licensed certain games that violated gambling laws, that the issuance of licenses was itself a crime, and seeking to enjoin the city from issuing the licenses. (*Id.* at pp. 12–14, 17.) The trial court issued an injunction. The Supreme Court reversed, holding "that unless the conduct complained of constitutes a nuisance as declared by the Legislature, equity will not enjoin it even if it constitutes a crime, as the appropriate tribunal for the enforcement of the criminal law is the court in an appropriate criminal proceeding." (*Ibid.*) The court explained that the injunction was "basically one to enjoin the alleged commission of a crime" (*id.* at p. 18),

14

and thus "has the collateral effect of depriving a defendant of the jury trial to which he would be entitled in a criminal prosecution for violating exactly the same standards of public policy. . . ." (*Id.* at p. 19.) The defendant is also deprived of the protection of the higher burden of proof. (*Ibid.*) "For these reasons," the court explained, "equity is loath to interfere where the standards of public policy can be enforced by resort to the criminal law, and in the absence of a legislative declaration to that effect, the courts should not broaden the field in which injunctions against criminal activity will be granted." (*Ibid.*)

In *Schur*, the Supreme Court also observed that "[t]he local officials are vested with the power" of determining whether licenses should be issued for the games and that "[h]ere there was a public hearing on the precise issue, whether the games for which licenses were sought violated the Penal Code, and due notice was given to all concerned which would include a taxpayer." And so, a taxpayer action was not an available remedy. (*Schur, supra,* 47 Cal.App.2d at pp. 17–18.)

In sum, *Schur* stands for the proposition that where the Legislature has provided an administrative remedy, a taxpayer action cannot be used in lieu of that remedy. Here, the remedy provided by the Legislature is not administrative, but it is a carefully crafted legislative mechanism for enforcing the Penal Code section plaintiffs claim defendants violated. Given this detailed legislative scheme, we believe the Legislature intended the enforcement mechanisms it established—and the entities in whom it entrusted such enforcement—to be the exclusive mechanisms for, and entities charged with, such enforcement. Put otherwise, the more general remedy of a taxpayer action was not intended to be used in their stead.

Because standing is a procedural requirement plaintiffs cannot satisfy, we need not address their remaining claims.

## DISPOSITION

The judgments are affirmed. Defendants shall recover their costs on appeal.

15

_____
Richman, J.

We concur:


_____
Kline, P.J.


_____
Stewart, J.

A140981

Animal Leal Defense Fund et al. v. California Exposition and State Fairs et al.

A140981P

| | |
|---|---|
| Attorney for Plaintiffs and Appellants: | Christopher A. Berry and Matthew Glen Liebman |
| Attorneys for Defendants and Respondents: | Kamala D. Harris, Attorney General, Gavin G. McCabe, Supervising Deputy Attorney General, Linda Lea Gandara and Tiffany Suzanne Yee, Deputy Attorneys General, for California Exposition and State Fair |
| | Crowell & Moring, Emily T. Kuwahara and J. Daniel Sharp; University of California Office of the General Counsel, Karen Petrulakis, Charles Robinson, and Margaret Louisa Wu for The Regents of the University of California |
| Amicus Curiae on Behalf of Plaintiffs and Appellants: | The Humane Society of the United States, Peter Alfred Brandt and Rebecca Ann Cary |