Filed 5/16/24  Barrett v. State of Cal. CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JAMES G. BARRETT, | D081639 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2022-00021398-CU-MC-CTL) |
| STATE OF CALIFORNIA, et al., | |
| Defendants and Respondents. | |

APPEAL from judgments of the Superior Court of San Diego County, Timothy Taylor, Judge.  Affirmed.

James G. Barrett, in pro. per., for Plaintiff and Appellant.

Rob Bonta, Attorney General, Cheryl L. Feiner, Assistant Attorney General, Gregory D. Brown and Darin L. Wessel, Deputy Attorneys General, for Defendants and Respondents State of California, Gavin Newsom, California Health and Human Services Agency, Mark Ghaly, California Department of Public Health and Tomàs Aragòn.

Schwartz Semerdjian Cauley & Evans, Dick A. Semerdjian and Chad M. Thurstan for Defendants and Respondents County of Imperial, California, Imperial County Public Health Department and Janette Angulo.

## INTRODUCTION

In this taxpayer lawsuit, James G. Barrett asserted the Pfizer and Moderna COVID-19 mRNA vaccines "are not vaccines," are unlawfully "misbranded," and any public official or public entity who used public funds to promote or distribute them were wasting public funds or failing to perform their mandatory duties. The trial court sustained demurrers to his first amended complaint without leave to amend. He appeals from the judgments of dismissals, challenging only the denial of leave to file his proposed second amended complaint. We conclude Barrett has forfeited his appellate challenge by failing to present any cogent arguments as to how the proposed amendments cure the pleading defects. Even if not forfeited, we conclude the trial court did not abuse its discretion in denying leave to amend. We affirm.

## BACKGROUND[1]

### I.

### *Federal Emergency Use Authorizations and Approvals for the Pfizer and Moderna COVID-19 mRNA Vaccines*

As a result of the global outbreak of the SARS-CoV-2 virus that causes COVID-19 illness, the Secretary of the U.S. Health and Human Services Agency (HHS) declared a national public health emergency on February 4, 2020. One month later, on March 4, Governor Gavin Newsom declared a state of emergency in California. The Governor then issued multiple executive orders to respond to the pandemic.

---

[1] Our summary of the facts derives from the first amended complaint, proposed second amended complaint, and matters which the trial court properly judicially noticed in consideration of the demurrers. (See *Mathews v. Becerra* (2019) 8 Cal.5th 756, 768 (*Mathews*).)

On March 27, 2020, HHS declared circumstances exist to justify the authorization of emergency use of drugs and biologics during the COVID-19 pandemic.  In December 2020, the U.S. Food and Drug Administration (FDA) issued two emergency use authorizations (EUAs) under the Federal Food, Drug, and Cosmetic Act (FD&C Act) for the Pfizer and Moderna COVID-19 mRNA vaccines.  As described by the FDA, both vaccines are "for active immunization to prevent COVID-19 caused by severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2) in individuals" and "contain[ ] a nucleoside-modified messenger RNA (modRNA) encoding the viral spike (S) glycoprotein of SARS-CoV-2 formulated in lipid particles."

The FDA's authorization of the vaccines, and subsequent EUA renewals, included criteria and conditions for the manufacture, distribution, packaging and labeling of the vaccines, as well as dissemination of provider, recipient, and caregiver vaccine information fact sheets.  The FDA-approved fact sheets, packaging and labeling identified mRNA as an ingredient in the Pfizer and Moderna COVID-19 mRNA vaccines.

The federal government purchased and distributed the Pfizer and Moderna COVID-19 mRNA vaccines as part of the Federal COVID-19 Vaccination Program.  To support broad-based distribution and equitable access, the federal program also provided funding to state and local jurisdictions to help increase the number of vaccine provider sites, enroll and train vaccine providers, fund local health departments to expand their operations, support public health workforce recruitment and training, and to implement vaccine strike teams and mobile vaccine clinics.  It also provided funding to help state and local jurisdictions increase vaccine confidence through education and outreach.

The State of California responded to the public health crisis by aggressively promoting and facilitating vaccination against COVID-19.  In December 2020, California's Health and Human Services Agency (CalHHS) and California Department of Public Health (CDPH) announced the COVID-19 Vaccine Action Plan, also known as "Vaccinate All 58," a public education campaign to increase vaccine confidence and administration of the vaccines.  In February 2022, Governor Newsom "unveiled the SMARTER [(Shots, Masks, Awareness, Readiness, Testing, Education, and Rx)] Plan" to guide California's continued management of the pandemic.  By then, California had "administered more than 70 million doses of COVID-19 vaccine, and nearly 80% of those over 12 ha[d] been fully vaccinated."

II.

*First Amended Complaint*

In June 2022, Barrett, a taxpayer who resides in Imperial County, filed a lawsuit asserting the Pfizer and Moderna COVID-19 mRNA vaccines "are not vaccines"; are "misbranded" because their packaging and labeling include the word " 'vaccine' " and omit they are "product[s] derived from mRNA technology," in violation of the Sherman Food, Drug, and Cosmetic Law (Sherman Law) (Health & Saf. Code, § 109875 et seq.); and the use of public funds by any public entity or public official to promote or distribute the vaccines constituted a government waste or the failure to perform mandatory duties.  (Italics omitted.)

In his operative first amended complaint, Barrett sued the State of California, Governor Newsom in his official capacity, the CalHHS and Secretary Dr. Mark Ghaly, the CDPH and Director Dr. Tomàs Aragòn (collectively, State), as well as the County of Imperial, its Public Health Department and Director Janette Angulo (collectively, Imperial County).  He

4

asserted two causes of action: (1) a taxpayer claim for waste of public funds (Code Civ. Proc.,[2] § 526a) against each defendant; and (2) a cause of action for writ of mandate (§ 1085) against Governor Newsom, Dr. Aragòn, and Ms. Angulo.[3]

As to the second cause of action, he alleged: Governor Newsom abused his discretion by "failing to declare that no C[OVID]-19 emergency currently exists in the State of California" and by "not rescinding his C[OVID]-19 Emergency Declaration" of March 4, 2020. Dr. Aragòn abused his discretion by "not enforcing" the Sherman Law with regard to the allegedly misbranded vaccines. And Ms. Angulo directed the Imperial County Public Health Department to sponsor vaccine events and clinics within Imperial County by "providing resources, logistical support, and by advertising them on the official county website."

Barrett sought mandamus and injunctive relief to stop defendants from spending public funds on COVID-19 vaccination programs; require that they enforce the Sherman Law against the allegedly misbranded vaccines; and to direct Governor Newsom to rescind his March 4, 2020 emergency declaration.[4] He also sought declaratory relief, asking the trial court to

---

[2]    Further undesignated statutory references are to the Code of Civil Procedure.

[3]    Barrett styled his section 526a cause of action against each defendant as "Count One" of the first through ninth causes of action, and his section 1085 cause of action for writ of mandate against Governor Newsom, Dr. Aragòn, and Ms. Angulo as "Count Two" of the second, sixth, and ninth causes of action, respectively.

[4]    The Governor declared an end to his March 4, 2020 declaration of emergency on February 28, 2023.

declare the Pfizer and Moderna COVID-19 mRNA vaccines are not vaccines under California law, are misbranded, and their possession, sale, use, and transportation in California is unlawful; and that "Alex Jones was right" that the Pfizer and Moderna COVID-19 mRNA vaccines "are not vaccines." (Capitalization omitted.)

### III.

### *Demurrers*

The State and Imperial County separately demurred. In November 2022, the trial court held a hearing on Imperial County's demurrer, sustained the demurrer without leave to amend, and entered judgment of dismissal in favor of Imperial County on November 30. At a hearing on the State's demurrer in January 2023, the court granted the State's request for judicial notice of 26 matters, sustained the demurrer without leave to amend, and entered judgment of dismissal in favor of the State on January 20. Barrett had filed a proposed second amended complaint with his opposition to the demurrers. The trial court denied his request for leave to amend.

### DISCUSSION

### I.

### *Standard of Review*

In reviewing an order sustaining a demurrer, we examine the operative complaint de novo to determine whether it alleges facts sufficient to state a cause of action under any legal theory. (*T.H. v. Novartis Pharmaceuticals Corp.* (2017) 4 Cal.5th 145, 162.) We assume the truth of all material facts properly pled, but not of contentions, deductions, or conclusions of fact or law. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) We may consider matters a court may judicially notice (*Mathews, supra*, 8 Cal.5th at p. 768) and treat allegations that are contrary to the law or contradicted by judicially

6

noticeable facts as "a nullity" (*C.R. v. Tenet Healthcare Corp.* (2009) 169 Cal.App.4th 1094, 1102; accord *Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20). We review an order denying leave to amend for abuse of discretion. (*Blank*, at p. 318.) We reverse if there is a reasonable possibility that the defect can be cured by amendment; if not, there has been no abuse of discretion and we affirm. (*Ibid.*) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid.*)

## II.

### *Barrett's Appellate Claim Is Forfeited*

Barrett, in his opening brief, does not challenge the trial court's orders sustaining the State's and Imperial County's demurrers to the first amended complaint. We deem any such challenge forfeited. (*Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075 (*Delta*) ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited."]; *McGettigan v. Bay Area Rapid Transit Dist.* (1997) 57 Cal.App.4th 1011, 1016, fn. 4 [failure to raise arguments challenging ruling sustaining demurrer results in abandonment of claims].)

His appellate challenge is limited to the trial court's order denying leave to file his proposed second amended complaint. This claim is forfeited, too. It is Barrett's burden to show "in what manner he can amend his complaint and how that amendment will change the legal effect of his pleading." (*CAMSI IV v. Hunter Technology Corp.* (1991) 230 Cal.App.3d 1525, 1539 (*CAMSI IV*) [cleaned up].) But he fails to present any arguments, or explanations, as to how his proposed second amended complaint cures the defects fatal to his first amended complaint.

7

In his 13-page opening brief on appeal, Barrett asserts his proposed second amended complaint "clearly and explicitly demonstrates that there are many properly pled issues that can be litigated."  He then quotes verbatim paragraphs from the proposed second amended complaint:

mRNA is a component in the "Pfizer-BioNTech COVID 19 Vaccine", "Pfizer-BioNTech COVID 19 Vaccine, Bivalent", "Moderna COVID 19 Vaccine", and "Moderna COVID 19 Vaccine, Bivalent" products. (pSAC ¶¶ 20, 49).

Neither the labels nor outer packaging of the "Pfizer-BioNTech COVID 19 Vaccine", "Pfizer-BioNTech COVID 19 Vaccine, Bivalent", "Moderna COVID 19 Vaccine", and "Moderna COVID 19 Vaccine, Bivalent" products state that mRNA is an ingredient. (pSAC ¶¶ 21, 50).

The "Pfizer-BioNTech COVID 19 Vaccine", "Pfizer-BioNTech COVID 19 Vaccine, Bivalent", "Moderna COVID 19 Vaccine", and "Moderna COVID 19 Vaccine, Bivalent" products do not contain any biological material. (pSAC ¶¶ 22, 51).

The "Pfizer-BioNTech COVID 19 Vaccine", "Pfizer-BioNTech COVID 19 Vaccine, Bivalent", "Moderna COVID 19 Vaccine", and "Moderna COVID 19 Vaccine, Bivalent" products do not contain any viral material. (pSAC ¶¶ 23, 52).

The "Pfizer-BioNTech COVID 19 Vaccine", "Pfizer-BioNTech COVID 19 Vaccine, Bivalent", "Moderna COVID 19 Vaccine", and "Moderna COVID 19 Vaccine, Bivalent" products do not contain any toxins. (pSAC ¶¶ 24, 53).

The "Pfizer-BioNTech COVID 19 Vaccine", "Pfizer-BioNTech COVID 19 Vaccine, Bivalent", "Moderna COVID 19 Vaccine", and "Moderna COVID 19 Vaccine, Bivalent" products do not contain any antigens. (pSAC ¶¶ 25, 54).

The packaging and labeling of the "Pfizer-BioNTech COVID 19 Vaccine", "Pfizer-BioNTech COVID 19 Vaccine, Bivalent", "Moderna COVID 19 Vaccine", and "Moderna COVID 19 Vaccine, Bivalent" products prominently display the word "vaccine". (pSAC ¶¶ 27, 56).

8

The packaging and labeling of the "Pfizer-BioNTech COVID 19 Vaccine", "Pfizer-BioNTech COVID 19 Vaccine, Bivalent", "Moderna COVID 19 Vaccine", and "Moderna COVID 19 Vaccine, Bivalent" products that Pfizer, Inc. and Moderna, Inc. sell and distribute within the outer boundaries of the State of California do not make any mention that the products are derived from mRNA technology. (pSAC ¶¶ 28, 57).

Prior to the emergence of SARS-Cov2, mRNA technology has never been used to attempt to inoculate either humans or animals. (pSAC ¶¶ 29, 58).

With such supporting the ultimate fact that, The "Pfizer-BioNTech COVID 19 Vaccine", "Pfizer-BioNTech COVID 19 Vaccine, Bivalent", "Moderna COVID 19 Vaccine", and "Moderna COVID 19 Vaccine, Bivalent" products are not vaccines. (pSAC ¶¶ 26, 55).

He concludes, "Without a doubt, the proposed second amended complaint sufficiently states triable issues" and the trial court "should have permitted the proposed amendment." He fails to explain how or why. We therefore conclude he has forfeited his appellate challenge. (*Delta*, *supra*, 48 Cal.App.5th at p. 1075; *CAMSI IV*, *supra*, 230 Cal.App.3d at p. 1539.)

III.

*No Abuse of Discretion in Denial of Leave to Amend*

Even if not forfeited, we conclude the trial court did not abuse its discretion in denying Barrett leave to amend. Our independent review of the proposed second amendment reveals it fails to state any viable cause of action.

9

A.      *Section 526 Taxpayer Claim*

Under section 526a,[5] a taxpayer may bring suit to enjoin "illegal, injurious, or wasteful" government action. (*Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1249, 1252; *Coshow v. City of Escondido* (2005) 132 Cal.App.4th 687, 713–714.) Although courts have construed section 526a liberally to serve its remedial purpose, "section 526a does not confer unrestricted standing to taxpayers." (*Weatherford*, at p. 1251.) A cause of action under section 526a "will not lie where the challenged governmental conduct is legal" (*Coshow*, at p. 714), or "where the real issue is a disagreement with the manner in which government has chosen to address a problem in matters involving the exercise of judgment or wide discretion" (*ibid.* [cleaned up], quoting *Sundance v. Municipal Court* (1986) 42 Cal.3d 1101, 1138 (*Sundance*)). Stated differently, "section 526a does not allow the judiciary to exercise a veto" over the legislative or executive branch of government on claim that "the expenditures are unwise, that the results are not worth the expenditure, or involves bad judgment." (*Sundance*, at p. 1138 [cleaned up].)

" '[T]he essence of a taxpayer action remains an illegal or wasteful expenditure of public funds.' " (*Humane Society of the United States v. State Bd. of Equalization* (2007) 152 Cal.App.4th 349, 355.) As used in section 526a, a public expenditure is a "waste" of public funds if it is "totally

_____

[5]      "An action to obtain a judgment, restraining and preventing any illegal expenditure of, waste of, or injury to, the estate, funds, or other property of a local agency, may be maintained against any officer thereof, or any agent, or other person, acting in its behalf, either by a resident therein, or by a corporation, who is assessed for and is liable to pay, or, within one year before the commencement of the action, has paid, a tax that funds the defendant local agency[.]" (§ 526a.)

10

unnecessary" or " 'useless' " or "provides no public benefit." (*Sundance*, *supra*, 42 Cal.3d at pp. 1138, 1139.)  " 'General allegations, innuendo, and legal conclusions are not sufficient' " to state a cause of action under section 526a; rather, " 'the plaintiff must cite specific facts and reasons for a belief that some illegal expenditure or injury to the public fisc is occurring or will occur.' " (*Humane Society*, at p. 355; accord *Sagaser v. McCarthy* (1986) 176 Cal.App.3d 288, 310–311 [plaintiff "must cite specific facts and reasons supporting a belief that the state may be guilty of illegally spending public funds"].)

In sustaining defendants' demurrers, the trial court found the first amended complaint failed to state a taxpayer cause of action, for three independent reasons.  First, insufficient facts were pled to show the expenditure of public funds by the defendants in connection with the COVID-19 vaccines was totally unnecessary, useless, or provided no public benefit.  Second, insufficient facts were pled to show the expenditure of public funds was illegal.  Specifically, Barrett failed to identify any statutory provision, including the Sherman Law, that required disclosure of the technology (namely, mRNA) from which a " 'vaccine,' 'drug,' or 'device' " is derived.  Third, the court found Barrett's claim "states no more than a disagreement with the manner in which two branches of the government have chosen to address a public health problem" and it would not take judicial cognizance of a dispute primarily political in nature.

As we have previously discussed, Barrett does not dispute the trial court's rulings that he failed to state a viable taxpayer cause of action.  He challenges only the court's exercise of discretion in denying leave to file the proposed second amended complaint.  And although we conclude Barrett forfeited the challenge based on his gross briefing deficiencies, we also reject

11

it on the merits.  We have independently reviewed the proposed second amended complaint and conclude it does not cure the pleading defects.

The 10 paragraphs of the proposed second amended complaint Barrett refers us to in his opening brief, for example, do not establish he has taxpayer standing.  If anything, his proposed amendments serve only to further demonstrate he does not have a viable cause of action under section 526a.  He alleges, for example: "Prior to the emergence of SARS-Cov2, mRNA technology has never been used to attempt to inoculate either humans or animals."  And "in California, more people who have received [the vaccines] . . . have suffered the side effect of ***DEATH***, then have those who have not received any injections and then died from Covid-19 (SARs-Cov2)."  Rather than specific facts and reasons to show an illegal or wasteful expenditure of funds, these new allegations further expose that Barrett's dispute is principally a disagreement with the manner in which government has chosen to address the COVID-19 public health crisis.  (*Sundance*, *supra*, 42 Cal.3d at p. 1138.)

The proposed second amended complaint also adds facts that the federal government determined the issuance of EUAs for the Pfizer and Moderna COVID-19 mRNA vaccines were "appropriate to protect the public health or safety" under the FD&C Act.  These amendments underscore that Barrett cannot plead sufficient facts to demonstrate the public expenditure is "totally unnecessary," " 'useless' " or "provides no public benefit."  (*Sundance*, *supra*, 42 Cal.3d at pp. 1138, 1139.)

B.    *Section 1085 Writ of Mandate Cause of Action*

Section 1085 declares that a writ may be issued "by any court to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office,

12

trust, or station." However, "[w]e cannot compel another branch of the government to exercise its discretion in a particular manner." (*AIDS Healthcare Foundation v. Los Angeles County Dept. of Public Health* (2011) 197 Cal.App.4th 693, 705.) "An essential element of a cause of action for mandamus is the existence of a clear, present and usually ministerial duty upon the part of the respondent." (*Jones v. Omnitrans* (2004) 125 Cal.App.4th 273, 278.) "A ministerial duty is an act that a public officer is *obligated* to perform in a prescribed manner required by law when a given state of facts exists." (*Ibid.*, italics added.) Thus a writ of mandate is unavailable to compel a state agency or officer to exercise discretion in any particular way.

Barrett's second cause of action for mandamus fails as a matter of law. The defendants' actions in promoting, distributing, or administering the vaccinations as part of the State's efforts to respond to the COVID-19 public health emergency involve discretionary actions that may not be enjoined. As our Supreme Court said more than a 100 years ago, in a case affirming denial of mandamus to compel a public school to admit a non-vaccinated student: " 'What is for the public good, and what are public purposes, and what does properly constitute a public burden, are questions which the legislature must decide upon its own judgment, and in respect to which it is invested with a large discretion, which cannot be controlled by the courts[.]' " (*Abeel v. Clark* (1890) 84 Cal.226, 229–231.)

13

DISPOSITION

The judgments are affirmed.  Respondents are entitled to their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1) & (2).)


DO, J.

WE CONCUR:


IRION, Acting P. J.


CASTILLO, J.

14